**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff**, | **NO.** 20-cr-0033 (RAM) |
| v. | |
| MUIS LIDINILAH, | |
| **Defendant.** | |

## OPINION & ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

This matter comes before the Court on Defendant Muis Lidinilah's *Motion to Dismiss for Lack of Jurisdiction*. (Docket No. 18). Having considered the *Motion to Dismiss* and the United States' response in opposition thereto, the Court **DENIES** Defendant's *Motion to Dismiss*. Motions to dismiss in criminal cases are not intended to test the sufficiency of the Government's evidence and the Government may be able to establish at trial that this case fits the grant of jurisdiction in 18 U.S.C. § 7(1).

### I. BACKGROUND

This case arises from an alleged sexual assault aboard the M/V Carnival Fascination ("the Vessel"). Reportedly, the Vessel is a Commonwealth of Bahamas-flagged cruise ship registered to Carnival Corporation. (Docket No. 1-1 ¶ 15).

According to the affidavit in support of the criminal complaint in this case, the alleged sexual assault took place on

December 26, 2019 when Mr. Lidinilah ("Defendant" or "Mr. Lidinilah") escorted another crew-member to her stateroom. Id. ¶¶ 5-9. Both Defendant and the alleged victim are Indonesian nationals. Id. ¶¶ 4-5. According to the affidavit, the alleged attack took place in "international waters," approximately twenty-three (23) nautical miles west of Dominica. Id. ¶ 14.

Also according to the affidavit, Carnival Cruise Line reported the incident to the FBI and Defendant was detained when the Vessel called on San Juan, Puerto Rico. Id. ¶ 12-13. On January 23, 2020, a Grand Jury indicted Mr. Lidinilah and charged him with violations of 18 U.S.C. § 2241(a)(1) (aggravated sexual abuse) and 18 U.S.C. § 2244(a)(1) (abusive sexual contact). (Docket No. 14).

The Government contends the Court has subject matter jurisdiction under 18 U.S.C. § 7(1), which extends jurisdiction to vessels owned in whole or in part by citizens of the United States. (Docket No. 21 at 3-4). The Government also invokes case law from the Middle District of Florida in which another Carnival Corporation-owned cruise ship was involved. The Middle District of Florida ruled it had jurisdiction under 18 U.S.C. § 7(1). It reasoned that the cruise ship was owned in part by United States Citizens because Carnival Corporation's shares are publicly traded in the United States. Id. at 4. The Government also contends that

the exercise of personal jurisdiction over Defendant in this case comports with international law. Id.

In the *Motion to Dismiss*, Defendant argues that Congress lacks authority to extend § 2241 and § 2244(a)(1) to reach conduct between two Indonesian crew members on-board a foreign-flagged vessel and where no United States citizen is involved. (Docket No. 18 at 1-2). Defendant also takes issue with Pizdrint because imputing ownership of the Vessel to Carnival Corporation's United States shareholders "pierces the corporate veil." Id. at 4.

Defendant's criticism of Pizdrint is colorable, but the Court need not rule upon it at this time. Motions to dismiss in criminal cases are not intended to test the sufficiency of the Government's evidence. As explained below, the Government may be able to establish at trial that this case fits within the grant of jurisdiction in 18 U.S.C. 7(1).

## II. APPLICABLE LAW

### A. Standards governing motions to dismiss under Fed. R. Crim. P. 12.

Pursuant to Fed. R. Crim. P. 12(b)(1), "**[a] party may raise by pretrial motion any defense, objection or request that the court can determine without a trial on the merits.**" (Emphasis added) Moreover, it provides that "[a] motion that the court lacks jurisdiction may be raised at any time while the case is pending." Fed. R. Crim. P. 12(b)(2). However, the power to dismiss an

indictment pursuant to Fed. Crim. 12(b) is "reserved for extremely limited circumstances" because it "directly encroaches upon the fundamental role of the grand jury." Whitehouse v. United States District Court, 53 F.3d 1349, 1360 (1st Cir. 1995) (citing Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1988)).

A motion to dismiss must attack the facial validity of the indictment and not the government's substantive case. *See* United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) (citing United States v. Stewart, 744 F.3d 17 21 (1st Cir. 2014)). When a defendant seeks an indictment's dismissal, "courts take the facts of the indictment as true, mindful that 'the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" Ngige, 780 F.3d at 502 (quoting United States v. Savarese, 686 F.3d 1, 7 (1st Cir. 2012)). "In general, an indictment is adequate if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend and allows him to contest it without fear of double jeopardy." United States v. Savarese, 686 F.3d 1, 7 (1st Cir. 2012) (citation omitted). The indictment "may use the statutory language to describe the offense, but it must also be accompanied by such statement of facts and circumstances as to inform the accused of the specific offense with which he is charged." Id. (citing United

States v. Mojica-Baez, 229 F.3d 292, 309 (1st Cir. 2000)). Most notably, "the government need not put forth specific evidence to survive a motion to dismiss." Ngige, 780 F.3d at 502.

The courts' reticence regarding pretrial motions to dismiss indictments reaches cases where defendants contend subject matter jurisdiction is lacking. *See e.g.,* United States v. Guerrier, 669 F.3d 1, 4 (1st Cir. 2012) (quoting United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998))(alterations in original) ("[U]nless prosecutors have 'made what can fairly be described as a full proffer of the evidence [they] intend[] to present on a pretrial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss the indictment.'") With few exceptions, a district court generally has subject matter jurisdiction over a federal criminal case "if the indictment charges that the defendant committed a crime described in a federal criminal statute." United States v. González-Mercado, 402 F.3d 294, 300-1 (1st Cir. 2005) (quotation omitted).

**B. The special maritime jurisdiction of the United States.**

Article I, Section 8, Clause 10 of the Constitution of the United States empowers Congress to "define and punish Piracies and Felonies committed in the high seas, and offenses against the laws of nations." U.S. Const. art. 1, § 8, cl. 10. As noted by commentators, "[f]rom the days of the Barbary Pirates, a well-

established principle of constitutional law has developed recognizing that the United States may give its federal criminal statutes an extraterritorial application to reach acts occurring outside of its territory." Robert D. Peltz & Lawrence W. Kaye, The Long Reach of U.S. Law Over Crimes Occurring on the High Seas, 20 U.S.F. Mar. L.J. 199, 202 (2008) (citation omitted).

Nevertheless, there is a presumption *against* extra-territorial application of acts of Congress. *See* Sale v. Haitian Crts. Council, Inc., 509 U.S. 155, 188 (1993); United States v. Nippon Paper Industries Co. Ltd., 109 F.3d 1, 3 (1st Cir. 1997) (holding that Section 1 of the Sherman Antitrust Act reached conduct that occurred in Japan and affected the United States market for thermal fax paper). "**In this context, the Supreme Court has charged inquiring courts with determining whether Congress has clearly expressed an affirmative desire to apply particular laws to conduct that occurs beyond the borders of the United States.**" Nippon Paper Industries Co. Ltd., 109 F.3d at 3 (quoting EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991)) (emphasis added). The United States Supreme Court has therefore held that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." Kiobel v. Royal Dutch Petroleum Co., 569 U.S. 108, 108 (2013) (quoting Morrison v. National Australia Bank Ltd., 561 U.S. 247, 255 (2010)). Congress has expressed this affirmative desire in the case at bar.

Both offenses charged in the indictment, namely aggravated sexual abuse and abusive sexual contact, prohibit acts in the "special maritime and territorial jurisdiction" of the United States. *See* 18 U.S.C. § 2241(a)(1) and 18 § U.S.C. § 2244(a)(1). 18 U.S.C. § 7 is "the main source for maritime jurisdiction over crimes occurring on the seas." Peltz & Kaye, supra, at 207. It defines the "special maritime and territorial jurisdiction" of the United States in the relevant part as follows:

> (1) The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.

> (2) Any vessel registered, licensed, or enrolled under the laws of the United States, and being on a voyage upon the waters of any of the Great Lakes, or any of the waters connecting them, or upon the Saint Lawrence River where the same constitutes the International Boundary Line.

> **\*\*\***

> (7) Any place outside the jurisdiction of any nation with respect to an offense by or against a national of the United States.

> (8) To the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States.

18 U.S.C. § 7.

Subsections 1 and 2 of 18 U.S.C. § 7 "formed the earliest bases for asserting jurisdiction, [and] were primarily limited to traditional concepts of physical presence within the United States' territorial waters or based upon American ownership of the vessels involved." Peltz & Kaye, supra, at 208. On the other hand, subsections 7 and 8 "significantly expanded U.S. Criminal jurisdiction" by including "crimes by and against American citizens occurring on the high seas, when the vessel was sailing to or from the United States, and to crimes occurring in foreign territorial waters." Id.

**C. Exceptions to the jurisdiction of the flag state.**

It is a well-established principle of International Law that the flag-state's jurisdiction over the vessel that bears its flag is presumed. *See* United States v. Arra, 630 F.2d 836, 840 (1st Cir. 1980) ("Vessels have the nationality of the nation whose flag they are entitled to fly" and "are subject to that nation's jurisdiction when on the high seas."); Richard J. Nikas, 2 Benedict on Admiralty, § 112a(4) (2019) (hereinafter "Benedict"). International Law recognizes five (5) principles whereby a state can assert jurisdiction over a foreign-flagged vessel. Id. §112(2). But, Courts within the United States recognize six (6) principles of International Law.[1]

---

[1] *See* United States v. Smith, 680 F.2d 255, 257-58 (1st Cir. 1982). Generally, International Law includes either a territorial principle **or** an "objective" territorial principle whereas some courts within the United States divide the

These principles are: (1) the territorial principle; (2) the objective territorial principle; (3) the protective principle; (4) the passive personality principle; (5) the nationality principle; and (6) the universal principle. *See* Guy Manchuk, The Law of the Flag and Maritime Criminal Jurisdiction: A New Rule to Replace an Outdated, Inconvenient Doctrine, 31 Tul. L.J. 221, 240 (2007); 1 Thomas J. Schoenbaum, Admiralty and Maritime Law, §3:12 (hereinafter "Schoenbaum") (citing Restatement (Third) of Foreign Relations § 402) (6th Edition, November 2019 update); *see also* United States v. Marino-Garcia, 679 F.2d 1373, 1380-1382 (11th Cir. 1982) (explaining exceptions to the exclusive jurisdiction of a vessel's flag state).

1. The Territorial Principle:

The territorial principle establishes that a court may have jurisdiction with respect to all persons or things by reference to the place where the offense was committed. *See* Benedict, supra, §112a(3); United States v. Diekelman, 92 U.S. 520, 525 (1875) ("The merchant vessels of one country visiting the ports of another […] subject themselves to the laws which govern the port they visit, so long as they remain; and this as well in war as in peace.") In other words, if an event occurs inside territorial limits over

---

principle between territorial (subjective) principle **and** the objective territorial principle. Id.; *see also*, Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 494 F. Supp. 1161, 1179 (E.D. Pa. 1980) (explaining the difference between a "subjective" and an "objective" interpretation).

which courts have jurisdiction, they may adjudicate the controversy. Even when a vessel is in the territorial waters of a foreign state, the United States may exercise jurisdiction if the foreign state consents. *See e.g.*, United States v. Cardales, 168 F.3d 548, 553 (1st Cir. 1999) (holding that jurisdiction was consistent with the territorial principle because the Venezuelan government had authorized the United States government to apply United States law to the persons onboard the vessel in question); *see also* United States v. Robinson, 843 F.2d 1, 4 (1st Cir. 1988).

2. The Objective Territorial Principle:

Under the objective territorial principle, a state is justified in exercising criminal jurisdiction over an offense which occurs aboard a foreign vessel when the conduct in question may have a substantial effect within its borders and the exercise of jurisdiction is not unreasonable. Benedict, supra, at §112b(1). For example, the Second Circuit in United States v. Yousef held that assertion of jurisdiction was appropriate under the objective territorial principle because the goal of the attack, a conspiracy to bomb United States' airlines in Southeast Asia in 1994 and 1995, "was to influence United States foreign policy and the defendants intended their actions to have an effect […] on and within the United States." United States v. Yousef, 327 F.3d 56, 96-97 (2d Cir. 2003). Likewise, the Ninth Circuit has also applied the objective territorial principle to exercise jurisdiction over

a defendant. *See* United States v. Neil 312 F.3d 419 (9th Cir. 2002). In Neil, the Ninth Circuit determined that exercising jurisdiction was proper by applying the objective territorial and passive personality principles to a prosecution against a foreign national for sexual contact with an American minor in Mexican territorial waters aboard the Carnival Elation, a Panamanian-flagged cruise ship. *See also*, United States v. Roberts, 1 F.Supp.2d 601 (E.D. La. 1998) (exercising jurisdiction under 18 U.S.C. § 7(8) over a case charging a foreign national with sexual abuse of an American minor on the high seas aboard the M/V Carnival Celebration, a Liberian-flagged vessel owned by Carnival Corporation and relying on the objective territorial and passive personality principles). Lastly, this principle, sometimes called the "effects" principle, derives from the territorial principle of jurisdiction and is "different from the latter only in its emphasis on the effect, rather than the initiation, of a crime as the key event relating to the territory." Benedict, supra, §112b(1).

3. The Protective Principle:

The protective principle states that courts may assert jurisdiction over an issue if a national interest is at stake. Benedict, supra, at §112b(1). Moreover, assertion of jurisdiction under the protective principle "does *not* require any element of the crime to have occurred in the asserting jurisdiction," rather "[a]ll the elements of the crime could be situated in a foreign

country." Id. (emphasis in original). Under the protective principle, jurisdiction may be asserted over foreigners for acts committed outside the United States when they affect "the territorial integrity, security or political independence of the United States." United States v. Vasquez-Velasco, 15 F.3d 833, 840 (9th Cir. 1994); *see also* Marino-Garcia, 679 F.2d at 1381 ("[T]he protective principle allows nations to assert jurisdiction over foreign vessels in the high seas that threaten their security or governmental functions"). Notably, some Circuit Courts of Appeals have held that "[the] protective principle does not require that there be proof of an actual or intended effect inside the United States." United States v. Saac, 632 F.3d 1203, 1211 (11th Cir. 2011) (quoting United States v. Gonzalez, 776 F.2d 931, 938 (11th Cir. 1985)). Lastly, a state (meaning a nation) can assert jurisdiction under this principle to punish conduct that is "generally recognized as a crime under the law of states that have reasonably developed legal systems." Restatement (Second) of Foreign Relations § 33(1).

### 4. The Passive Personality Principle:

The passive personality principle states that jurisdiction may be asserted based on the nationality of the person that suffered the offense. Benedict, supra, at §112b(5); *see also* Neil, 312 F.3d at 422; Roberts, 1 F.Supp.2d at 607. Moreover, said principle stands for the proposition "that a state may apply law

– particularly criminal law – to an act committed outside its territory by a person not its national where the victim of the act was its national." Restatement (Third) of Foreign Relations, §402 (October 2019 update). This means that "[j]urisdiction may be obtained under the passive personality principle over persons or vessels that injure the citizens of another country." Peltz & Kaye, supra, at 203 (quoting Marino-Garcia, 679 F.2d at 1380-81). Therefore, jurisdiction under the passive personality principle is applicable "at least where the state has a particularly strong interest in the crime." United States v. Yunis, 924 F.2d 1086, 1091 (D.C. Cir. 1991); *see also*, United States v. Benitez, 741 F.2d 1312, 1316 (11th Cir. 1984), cert. denied, 471 U.S. 1137 (1985) (holding that passive personality principle could be used to prosecute a Colombian national convicted of shooting a United States' drug enforcement agent in Colombia).

    5. The Nationality Principle:

    The nationality principle establishes that courts may have jurisdiction over extraterritorial maritime events when the individual that commits the offense is a national of the State to which the courts belong. Benedict, supra, at §112b(2). Further, as held by the Second Circuit, "[t]he nationality principle, which permits a nation to extend its legislative jurisdiction – or 'jurisdiction to prescribe' – to cover the conduct of its nationals abroad, is among the most firmly established bases for jurisdiction

recognized by international law." <u>United States v. Weingarten</u>, 632 F.3d 60, 67 (2nd Cir. 2011). Traditionally, the United States has primarily relied on the nationality and the territoriality principles to determine whether jurisdiction exists. *See* <u>United States v. Pizzarusso</u>, 388 F.2d 8, 10 (2nd Cir. 1968); <u>Benedict</u>, <u>supra</u>, at §112b(2). Thus, under this principle, "a country may supervise and regulate the acts of its citizens both within and without its territory." <u>United States v. Lawrence</u>, 727 F.3d 386, 394 (5th Cir. 2013).

6. <u>The Universal Principle</u>:

Lastly, the universal principle "allows a state to assert jurisdiction and prosecute a universally condemned crime." Manchuk, <u>supra</u> at 243; <u>Vasquez-Velasco</u>, 15 F.3d at 841 (upholding extraterritorial application of 18 U.S.C. § 1959 "[b]ecause drug smuggling is a universally condemned offense, [and] no conflict is likely to be created by extraterritorial regulation of drug traffickers."). Pursuant to the universal principle, states may prosecute "'certain offenses recognized by the community of nations as of universal concern, such as piracy, slave trade, attacks on or hijacking a certain aircraft, genocide, war crimes, and perhaps certain acts of terrorism,' even absent any special connection between the state and the offense." <u>Yunis</u>, 924 F.2d at 1091 (quoting Restatement (Third) of Foreign Relations Law § 404 (October 2019 update)). A leading treatise on admiralty cautions

that although the scope of the universal principle has expanded
since World War II, the principle is still limited to offenses
condemned at a universal level and suppressed through
international cooperation under international agreements and
resolutions of international organizations. *See* <u>Benedict</u>, §112(4).

## II.  DISCUSSION

In response to Defendant's *Motion to Dismiss*, the Government
invoked 18 U.S.C. § 7(1) and argued the Vessel is owned in part by
citizens of the United States because shares in Carnival
Corporation's stock are sold in the New York Stock Exchange and
presumably purchased by United States investors. (Docket No. 21 at
4). The Government relies on the Middle District of Florida's
Opinion in <u>United States v. Pizdrint</u>, 983 F. Supp. 1110 (M.D. Fla.
1997). In <u>Pizdrint</u>, the Middle District of Florida exercised
jurisdiction under 18 U.S.C. §§ 7(1) over the prosecution of a
permanent resident alien for assaulting his wife (also a permanent
resident alien) and assaulting a naturalized citizen aboard a
Liberian-flagged cruise ship while the vessel was one hundred (100)
miles west of Tampa, Florida. <u>Id.</u> at 1111. The cruise ship, as in
the case at bar, was owned by Carnival Corporation. <u>Id.</u> The
government in <u>Pizdrint</u> likewise contended that the cruise ship was
a vessel owned in part by citizens of the United States because
shares of stock in Carnival Corporation trade in the New York Stock

Exchange. Id. The Middle District of Florida agreed and found it had jurisdiction under 18 U.S.C. § 7(1). Id. at 1113.

As noted earlier, Defendant in the present case takes issue with Pizdrint because imputing ownership of the Vessel to United States investors in Carnival Corporation shares "pierces the corporate veil." (Docket No. 18 at 1-2). Although underdeveloped, Defendant's argument is certainly colorable because "**[a] basic tenet of American corporate law is that the corporation and its shareholders are distinct entities.**" Dole Food Corporation v. Patrickson, 538 U.S. 468, 474 (2003) (emphasis added). Accordingly, owners in shares of stock in a corporation **do not** own the assets of the corporation, as explained by the Supreme Court in Dole Food Corporation:

> **An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets** and, as a result, does not own subsidiary corporations in which the corporation holds an interest. See 1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 31 (rev. ed.1999). A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary. See *id.,* § 31, at 514 ("The properties of two corporations are distinct, though the same shareholders own or control both. A holding corporation does not own the subsidiary's property").

Id. at 475 (emphasis added). But the Court need not definitively rule upon Mr. Lidinilah's criticism of Pizdrint at this time for the reasons set below. As previously stated, motions to dismiss in

criminal cases are not intended to test the sufficiency of the government's evidence. The Government in the case at bar may be able to establish at trial that this case fits the grant of jurisdiction in 18 U.S.C. § 7(1) by ways which would obviate the need for the Court to follow or discard Pizdrint. This because 18 U.S.C. § 7, "extends federal criminal jurisdiction to crimes, like assault, that states traditionally regulate, when the crimes occur in a federal enclave" such as "the high seas and water within this Country's admiralty and maritime jurisdiction." United States v. Passaro, 577 F.3d 207, 212 (4th Cir. 2009) (citing 18 U.S.C. § 7(1)). Therefore, the statute, 18 U.S.C. § 7, "makes the *site* of the offense an element of the crime." Id. (citations omitted) (emphasis in original).

Based on the plain text of the statute, jurisdiction under 18 U.S.C. § 7(1) can also lie if the offenses were committed while the Vessel-**even if foreign-flagged**-was on the "high seas." Jurisdiction under 18 U.S.C. § 7(1) would also exist if the Vessel is owned in whole or in part by citizens of the United States **or** owned by a corporation created under the laws of a State of the United States. *See* Benedict, §112a(4) (citing United States v. Keller, 451 F.Supp. 631 (D.P.R. 1978)) ("There have been controversies over the provision in special maritime jurisdiction granting statute which allows the United States jurisdiction over ships partially owned by United states citizens. **But case law has**

**upheld that provision**."). Thus, according to a leading admiralty law treatise:

> The statute specifically mentions vessels belonging in whole or in part to the United States, or to any corporation chartered under the laws of the United States, **but the operative language extending jurisdiction to all crimes committed on the high seas** and any other water outside the jurisdiction of any state **would cover crimes aboard foreign vessels as well**.

Schoenbaum, supra, footnote 12 (emphasis added). Thus, there are grounds to believe these alternate bases of jurisdiction could be available here depending on the evidence at trial.

For example, the Government might be able to establish at trial that the Vessel is owned by "a corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof." 18 U.S.C. 7(1). The Vessel is reportedly registered to Carnival Corporation. (Docket 1-1 ¶ 15). The Court takes judicial notice of Carnival Corporation's 2019 10-K Annual Statement which states that Carnival Corporation is a corporation incorporated under the laws of the Republic of Panama with principal executive offices in Miami, Florida.[2] *See* Fed. R. Evid. 201. But, a corporation may be incorporated in more than one jurisdiction. *See* Panalpina Welttransport GMBH v. Geosource, Inc., 764 F.2d 352, 354 (5th Cir. 1985) (holding that a corporation can become a citizen of multiple places for purposes of diversity

---

[2]    *See* Carnival Corporation, SEC Form 10-K (FY 2019) https://www.carnivalcorp.com/static-files/ddd975ba-cef0-43fe-9bf9-bb4c376ed914 (last visited on April 2, 2020).

jurisdiction when it has several places of incorporation, principal place of business or under the alter ego or consolidation doctrines). Incorporation is the "process of forming or creating a corporation."[3] Here, according to Securities and Exchange Commission records, Carnival Corporation is also incorporated in Delaware.[4]

Thus, at trial the Government might be able to establish jurisdiction under 18 U.S.C. § 7(1) if it presents competent evidence showing the owner of the M/V Carnival Fascination is incorporated in a State of the United States, even if also incorporated in a foreign jurisdiction. *Cf.* Jerguson v. Blue Dot Inv., Inc., 659 F.2d 31, 35 (5th Cir. 1981) (holding that there was no diversity jurisdiction between a Florida plaintiff and a Panamanian company whose **only** principal place of business was in Florida.).

The Government might also be able to establish at trial that the Vessel was on the high seas at the time the alleged offenses were committed. This fact alone would be sufficient to establish jurisdiction under the first clause of 18 U.S.C. § 7(1) which provides that the "special maritime and territorial jurisdiction of the United Sates" includes "the high seas" which are "any other

---

[3] *See* Incorporation, https://thelawdictionary.org/incorporation/ (2ed. last visited on April 2, 2020).

[4] *See* Carnival Corporation, Securities and Exchange Commission Central Index Key, https://sec.report/CIK/0000815097 (last visited on April 2, 2020).

water within the admiralty and maritime jurisdiction of the United states and out of the jurisdiction of any particular State." The high seas also include all waters beyond the territorial seas of the United States and beyond the territorial seas of any nation. *See* United States v. Louisiana, 394 U.S. 11, 22 (1969); Thompson v. United States, 608 Fed. Appx. 726, 728 (11th Cir. 2015); United States v. Beyle, 782 F.3d 159, 166 (4th Cir. 2015); United States v. Postal, 589 F.2d 862, 868 (5th Cir. 1982).

According to the affidavit in support of the criminal complaint in this case, the M/V Carnival Fascination was twenty-three (23) nautical miles west off Dominica at the time of the alleged assault. (Docket 1-1 ¶ 14). Both the United States and Dominica claim territorial seas of twelve (12) nautical miles from their shores. *See* 33 C.F.R. § 2.22(a)(1)(ii), (iii), (iv) (applying a United States territorial sea of twelve (12) nautical miles for determining United States criminal jurisdiction and the special maritime and territorial jurisdiction, and for interpreting international law); Proclamation No. 5928, 54 Fed. Reg. 777 (Dec. 27, 1988) (extending the U.S. territorial sea to twelve nautical miles "in accordance with international law"); Proclamation No. 7219, 64 Fed. Reg. 48701 (Aug. 2, 1999) (extending the contiguous zone of the United States to twenty-four (24) nautical miles).[5]

---

[5] *See also,* Dominica, CIA World Fact Book, https://www.cia.gov/library/ publications/the-worldfactbook/geos/do.html (last visited on April 2, 2020).

Moreover, consistent with the United Nations Convention on the Law of the Sea, it is "the policy of the United States not to respect claims that a territorial sea extends beyond twelve nautical miles." Beyle, 782 F.3d 1 at 168.

The assertion of jurisdiction may very well comport with international law under the objective territorial principle. Under this principle, a state may exercise criminal jurisdiction over an offense that took place in a foreign vessel when such conduct may have a substantial effect within the United States and exercising jurisdiction is not deemed unreasonable. *See* Schoenbaum, supra, § 3:12. When determining what conduct may have an effect in the United States, courts consider the nexus of the foreign vessel with the United States. *See* Marino-García, 679 F.2d at 1380 ("Jurisdiction will lie where a nexus exists between the foreign vessel and nation seeking to assert jurisdiction").

Here, the Vessel seems to have a significant nexus with the United States. First, as stated above, Carnival Cruises has its principal executive offices in Miami, Florida. (Docket No. 21 at 3). Second, according to the Government, the Carnival Fascination sailed from, and returned to, Puerto Rico. Id. at 2.

Mr. Lidinilah's actions also seem to have had a substantial effect in the United States. Carnival's Security Team reported the incident to the FBI, who subsequently investigated the incident. (Docket 1-1 ¶¶ 12-13). Likewise, Defendant was first arrested in

the District of Puerto Rico pursuant to an Arrest Warrant issued on December 29, 2019. (Docket No. 2). *Cf.* United States v. Liang, 224 F.3d 1057, 1061 (9th Cir. 2000) (holding that while a criminal act which begins on the high seas falls under the jurisdiction of 18 U.S.C. §3238 as "begun or committed upon the high seas," there was still a lack of venue because the defendant was not first arrested in Northern Mariana Islands nor was he "first brought" to Northern Mariana Islands while already under custody because he had already been intercepted in Guam). *Moreover, it has not been brought to the court's attention that some other Country - be it the Bahamas or Indonesia - has shown an interest in prosecuting Mr. Lidinilah*. *See* Roberts, 1 F. Supp. 2d at 608 (reiterating that no foreign nation had sought to prosecute the defendant as part of its analysis under the objective territorial principle).

Lastly, Defendant does not point to a treaty which conflicts with the jurisdiction conferred under 18 U.S.C. §7(1) and which the United States must conform to in accordance with international obligations. *See e.g.*, Sale, 509 U.S. at 169 (holding that the Refugee Act of 1980 was intended to conform United States law to the United Nations Convention Relating to the Status of Refugees.); United States v. Clark, 266 F. Supp. 3d 573, 585 (D.P.R. 2017)(describing how U.N. Drug Convention's Articles 3, 4, and 17 require the United States to "co-operate to the fullest extent

possible to suppress illicit traffic [of drugs] by sea, in conformity with the international law of the sea.")

### III. CONCLUSION

For the reasons set forth herein, Defendant's *Motion to Dismiss for Lack of Jurisdiction* (Docket No. 18) is hereby **DENIED**. Defendant may renew this motion at trial.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, April 3, 2020.

s/Raúl M. Arias-Marxuach_____
RAÚL M. ARIAS-MARXUACH
UNITED STATES DISTRICT JUDGE