```
               IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
```

|   |   |
|---|---|
| UNITED STATES OF AMERICA<br><br>**Plaintiff**<br><br>v.<br><br>MUIS LIDINILAH<br><br>**Defendant** | **CRIMINAL NO.** 20-0033 (RAM) |

### <u>INDICATIVE RULING ON DEFENDANT'S MOTION FOR RECONSIDERATION</u>

RAÚL M. ARIAS-MARXUACH, U.S. District Judge

    Defendant Muis Lidinilah's second interlocutory appeal from the Court's September 3, 2020 Order of Detention is currently pending before the United States Court of Appeals for the First Circuit. (Docket Nos. 65 and 66). The matter comes before the Court on defendant Muis Lidinilah's *Motion for Reconsideration* and the Court of Appeals' October 2, 2020 Order directing the parties to proceed in accordance with Federal Rule of Criminal Procedure 37. (Docket Nos. 77 and 79). Based on the new information provided in the Second Amended Pretrial Services Report, the Court issues an indicative ruling stating it would reconsider its September 3, 2020 "Order of Detention" (Docket No. 65) and release Defendant subject to conditions stated below.

## I.     PROCEDURAL BACKGROUND

On January 23, 2020, a Grand Jury indicted defendant Muis Lidinilah ("Defendant" or "Mr. Lidinilah") with aggravated sexual abuse and abusive sexual contact, in violation of 18 U.S.C. 2241(a)(1) and 18 U.S.C. 2244(a)(1), respectively. (Docket No. 14). Mr. Lidinilah, as well as the alleged victim, were crew members of the vessel M/V Carnival Fascination. (Docket No. 1-1). After the alleged incident of sexual abuse, Defendant was ordered detained by Magistrate Judge Bruce McGiverin on January 16, 2020. (Docket No. 29). On April 21, 2020, this Court denied Defendant's *Motion for Release*. (Docket No. 41). Mr. Lidinilah then appealed to the First Circuit Court of Appeals ("First Circuit"). (Docket No. 45).

As a result of Mr. Lidinilah's first interlocutory appeal, on August 24, 2020, the First Circuit issued a Judgment vacating this Court's "*order(s) denying release on conditions*" and remanding "*so that the district court may evaluate whether Lidinilah poses a 'serious risk' under § 3142(f)(2)*" and could conduct further bail proceedings. (Docket No. 56 at 2).

On September 3, 2020, this Court held a detention hearing pursuant to 18 U.S.C. § 3142(f)(2) upon a finding that Defendant posed a serious risk of flight. (Docket No. 64). At the hearing, the parties proceeded by proffer. Id. The Court ordered that Defendant remain detained. (Docket No. 65 at 3).

At the September 3, 2020 detention hearing the United States Probation Office ("USPO") officer indicated that Guara Bi, a residential center, *i.e.* halfway house, would not accept Mr. Lidinilah if he was subject to electronic monitoring. (Docket No. 65; 74 at 10-11). In a colloquy with Defendant's counsel, the undersigned left open the possibility of release subject to finding a place where Defendant would be subject to electronic monitoring and other conditions. Id. at 26.

In response to the September 3, 2020 "Order of Detention," Defendant initiated his second interlocutory appeal on September 8, 2020. (Docket Nos. 65-66). Further, on September 28, 2020, Mr. Lidinilah filed the *Motion for Reconsideration of Detention Order* ("*Motion for Reconsideration*") currently pending before this Court. (Docket No. 77). By Order dated September 29, 2020 and entered on the docket of this case on October 2, 2020, the First Circuit ordered:

> The briefing schedule entered by this court on September 24, 2020, is **VACATED**, and the appeal is **STAYED**, pending further order. To the extent applicable, the parties and the district court should proceed in accordance with Federal Rule of Criminal Procedure 37.

(Docket 79) (emphasis in original).

In his September 28th *Motion for Reconsideration*, Defendant stated that Guara Bi *will* accept him with electronic monitoring. (Docket No. 77 at 1-2). He also offered a package of conditions in

lieu of electronic monitoring which he did not offer when prompted at the September 3, 2020 detention hearing. (Docket Nos. 64; 77 at 3). Lastly, he offered to be interviewed by the USPO so that his background information could be verified, after having previously refused a Pre-Trial Services interview. (Docket Nos. 64; 77 at 7).

On October 15, 2020, the Government filed an *Opposition to Motion for Reconsideration of Detention Order* ("Opposition"). (Docket No. 82). In a nutshell, the Government contends that Mr. Lidinilah should remain detained pending trial "*because of the serious nature of the offense charged against Mr. Lidnilah, the significant evidence against him, and the lack of family, community or professional ties to Puerto Rico.*" Id. at 1. The *Opposition* submitted a statement taken from Mr. Lidinilah in which he describes the incident and admits "*he did something wrong*[.]" Id. at 2. It also submitted the Federal Bureau of Investigation's ("FBI") report of its interview of Defendant describing the alleged incident which led to the charges levied against Defendant. (Docket 82-2). Defendant replied to the Government's *Opposition* on October 19, 2020. (Docket No. 87).

Per the briefing on Defendant's *Motion for Reconsideration*, on October 20, 2020 the Court issued an order to the USPO to: (1) "conduct a Pre-trial Services Interview of Defendant" and (2) "verify whether GuaraBi can in fact house the Defendant subject to electronic (GPS) monitoring[.]" (Docket No. 88).

On October 26, 2020, the USPO submitted an amended Pretrial Services Report which confirmed that Mr. Lidinilah has no ties to Puerto Rico or the rest of the United States. (Docket No. 89 at 2). It also confirmed the assertion that Guara Bi would house him even if he was subject to electronic monitoring. Id. at 3-4.

On October 27, 2020, Defendant filed a Motion in *Response in Opposition to Amended Pre-Trial Services Report* taking issue with the Amended Pretrial Services Report. (Docket No. 91). Lastly, on November 3, 2020, the Probation officer filed a Second Amended Pretrial Services Report. (Docket No. 95).

## II.   APPLICABLE LAW

### A. Standard on Motions for Reconsideration:

The Federal Rules of Criminal Procedure fail to "explicitly provide for motions for reconsideration." United States v. Montijo-Maysonet, 299 F.Supp.3d 366, 367 (D.P.R. 2018); *see also* United States v. Ortiz, 741 F.3d 288, 292 n. 2 (1st Cir. 2014) ("[M]otions for reconsideration in criminal cases are not specifically authorized either by statute or by rule.") Instead, the First Circuit applies the standard for motions under Rule 59(e) of the Federal Rules of Civil Procedure to motions for reconsideration in criminal cases. *See* Montijo-Maysonet, 299 F.Supp. 3d at 367; United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009) (applying Rule 59(e) to a motion for reconsideration in a criminal case).

A motion which asks "the court to modify its earlier disposition of a case because of an allegedly erroneous legal result is brought under Fed. R. Civ. P. 59(e)." Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 (1st Cir. 2005). The First Circuit considers a reconsideration **"an extraordinary remedy which should be used sparingly**." U.S. ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 127 (1st Cir. 2013) (internal quotation omitted) (emphasis added). Hence, a court may grant one **only** if there is a "manifest error of law, [...] newly discovered evidence, or in certain other narrow situations [such as a change in controlling law]." United States v. Peña-Fernández, 394 F.Supp.3d 205, 207 (D.P.R. 2019) (quotation omitted). "When the motion **simply regurgitates contentions that were previously made and rejected, the movant has no legal basis to insist upon reconsideration**." Liu v. Mukasey, 553 F.3d 37, 39 (1st Cir. 2009) (emphasis added).

**B. The Bail Reform Act:**

Pursuant to the Bail Reform Act of 1984 (the "Act"), a judicial officer must determine whether a person charged with an offense shall be detained or released pending judicial proceedings. *See* 18 U.S.C. § 3141(a). Section 3142(e) of the Act further provides that ultimately, if after conducting a hearing in accordance with 18 U.S.C. § 3142(f), "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of

any other person and the community, he shall order the detention of the person prior to trial." 18 U.S.C. § 3142(e)(1).

Section 3142(f) of the Act establishes the instances in which an accused individual is eligible for detention and therefore, a detention hearing is proper. *See* 18 U.S.C. § 3142(f). Specifically, Section 3142(f)(1)(a) of the Act requires that the judicial officer hold a detention hearing upon motion of the attorney for the Government in cases which involve "a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. § 3142(f)(1)(a). Likewise, Section 3142(f)(2) authorizes the court to hold a detention hearing upon government motion or *sua sponte* in cases that involve "a serious risk that such person will flee" **or** "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2). The standard of proof for detention due to dangerousness is clear and convincing evidence. Id. In turn, the standard of proof for detention due to risk of flight is preponderance of the evidence. *See* United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

When determining whether there are conditions of release to ensure the defendant's appearance *and* the safety of the community,

judicial officers must take into consideration the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

### III. DISCUSSION

Several Section 3142(g) factors weigh in favor of detention: the nature and circumstances of the offense charged, the weight of the evidence and Mr. Lidinilah's history and characteristics. However, the Court finds that the new information provided by the Second Amended Bail Report affirming that Guara Bi will house defendant subject to electronic monitoring means the Government **has not** met its evidentiary burden of proving that that there "is no condition or set of conditions" to ensure Mr. Lidinilah's appearance as required. 18 U.S.C. § 3142(e).

**A. The nature and circumstances of the offense charged**

According to the FBI's report of its interview with Mr. Lidinilah, the alleged sexual abuse occurred after a crew member party aboard the vessel M/V Carnival Fascination on December 26, 2019. (Docket 82-2 at 1). Mr. Lidinilah was drinking and saw the alleged victim dancing around 1:00 a.m. Id. He talked and smoked a cigarette with her and offered to escort her back to her room.

Id. He followed her into the room, kissed her, grabbed her breasts and inserted his finger into her vagina. Id. She told him to stop or she would scream. Id. He left her room and continued drinking. Id. at 1-2. The next day she reported he raped her. Id. at 2.

For these alleged acts, Mr. Lidinilah is charged with a violation of 18 U.S.C. § 2241(a) (aggravated sexual abuse). (Docket No. 1). If convicted, this offense carries a maximum statutory term of incarceration of life. *See* 18 U.S.C. § 2241(a). The Court can base its decisions to release or detain on the maximum statutory penalty. *See* United States v. Moss, 887 F.3d 333, 336-337 (1st Cir. 1989). But the specter of a stiff sentence still looms even under the advisory United States Sentencing Guidelines. Pursuant to United States Sentencing Guidelines' Section 2A3.1, a violation of § 2241(a) carries a base offense level of 30. *See* U.S.S.G. 2A3.1. The base level then increases by 4 points if the offense involved conduct under 18 U.S.C. § 2241(a), such as the one alleged here. Id. § 2241(b)(1). Assuming a Criminal History Category of I given that no evidence of prior criminal arrests has been proffered to the Court, the Guideline Sentencing Range for the charged offense is between 151 and 188 months.

**B. The weight of the evidence against Defendant**

The weight of the evidence against Defendant is strong. The Government has produced a statement taken from Mr. Lidinilah by a Carnival Security Officer and the FBI's report of its interview

with Mr. Lidinilah. (Docket Nos. 82-1 and 82). The statements coincide on the essential facts regarding the alleged incident of sexual abuse. Id. As noted earlier, Mr. Lidinilah is facing a stiff sentence if convicted. Notably, "numerous courts have recognized that the seriousness of the charge and the weight of the evidence can create a strong incentive for a defendant's flight." United States v. Pimentel-Ramirez, 2019 WL 6879332, at * 3 (D.P.R. 2019) (quoting United States v. Rodriguez-Adorno, 606 F. Supp. 2d 232, 236 (D.P.R. 2009) (citation omitted)).

**C. The History and Characteristics of the Defendant.**

Mr. Lidinilah is a twenty-seven year-old Indonesian national. (Docket No. 95 at 2). He reportedly possesses a degree in Marine Engine Mechanics and was employed as waiter aboard the vessel M/V Carnival Fascination at the time of his arrest. Id. No evidence has been presented of prior arrests or convictions. Id. at 3.

At the detention hearing, and in his bid to establish that conditions can be imposed to provide for his release, Defendant pointed out that he does not speak Spanish. (Docket No. 74 at 14, 17). While Spanish may be the predominant language of daily life in Puerto Rico, Mr. Lidinilah is fluent in English as a second language and English is also spoken in Puerto Rico. Id. at 7. Thus, Mr. Lidinilah's inability to speak Spanish, standing alone, is not a factor weighing against detention.

Case 3:20-cr-00033-RAM   Document 97   Filed 11/06/20   Page 11 of 15
Criminal No. 20-0033 (RAM)                                                  11

Defendant also points out that he does not have any money to pay or arrange for transportation which will "make any attempt to flee extremely difficult." (Docket No. 77 at 3). This is a factor that should not weigh in favor or against detention. While his lack of financial resources may hinder his ability to flee, it also means Mr. Lidinilah has nothing to lose financially by leaving the United States. *See* United States v. Lamp, 606 F.Supp. 193, 201 (W.D. Tex. 1985) (holding the same); *Cf.* United States v. Gomez-Encarnacion, 2015 WL 1647173, at *4 (D.P.R. 2015)(holding that the history and characteristics factor weighed heavily against defendant in part because he had access to large sums of money).

Turning to Mr. Lidinilah's alienage, standing alone, it is not inherently probative of a serious risk of flight nor is it a factor that "tip[s] the balance either for or against detention." Pimentel-Ramirez, 2019 WL 6879332, at *3 (quoting United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985)). Rather the fundamental question is what ties Mr. Lidinilah has with the United States in general and with Puerto Rico in particular. When tasked with assessing an alien defendant's ties to the United States, courts should consider the following factors: "how long the defendant has resided in this country, whether defendant has been employed in the United States, whether defendant owns any property in this country, and whether defendant has any relatives who are

Case 3:20-cr-00033-RAM   Document 97   Filed 11/06/20   Page 12 of 15

Criminal No. 20-0033 (RAM)                                            12

---

United States residents or citizens." Id. (quoting United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990).

Simply put, *Mr. Lidinilah has no ties to Puerto Rico or the rest of the United States.* According to the Second Amended Pretrial Services Report which was rendered with the benefit on an interview by Mr. Lidinilah, he has never resided in the United States and has no family or property in the United States. (Docket No. 95 at 2). His parents, wife and child are in Indonesia. Id. Thus, the lack of ties to the District and substantial sentence he faces if convicted provide a strong incentive to flee. *See* United States v. Smiley, 2019 WL 65299395, at *4 (D.P.R. 2019) (finding that defendant's lack of ties to Puerto Rico given that he was a lifelong resident of Texas and admitted to no personal, community of financial ties to Puerto Rico, coupled with a five-year sentence, made him a risk of flight thus detention was proper); *see also*, U.S. v. Pierce, 107 F.Supp. 2d 126, 133 (D. Mass. 2000).

### D. Whether there is a set of conditions that will reasonably assure the appearance of the person as required.

Indubitably Mr. Lidinilah stands accused of serious crimes, is exposed to a lengthy prison sentence, and the evidence against him is strong. However, the Court is not concerned with Defendant's guilt or innocence at this stage. Section 18 U.S.C. 3142(j) clearly states that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." See *also*,

Gomez-Encarnacion, 2015 WL 1647173, at *1 n.1 (explaining that during bail review, "[t]he Court remains cognizant that [defendant] enjoys the presumption of innocence at this stage of the proceedings.") Instead, the Court must assess whether there is a set of conditions that "will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(c).

To determine whether conditions of release could be imposed, the Court has also considered that Mr. Lidinilah does not stand accused of belonging to a drug trafficking conspiracy, a human smuggling ring, or some other criminal organization with international connections that could aid his escape. *Cf.* Gomez-Encarnacion, 2015 WL 1647173, at *5 (finding that defendant posed a significant risk of flight and should remain detained because not only did he "have means and motivation to flee the jurisdiction, but his direct ties to the upper members of the conspiracy and his managerial role within the [drug] organization poses a significant threat to the community."); United States v. Orta-Castro, 104 F. Supp. 3d 190, 195 (D.P.R. 2015) (holding that defendant should remain detained given that "persons who have strong ties to drugs potential to launder large quantities of cash proceeds from drug trafficking, and strong with ties with foreign contacts, as Defendant does, raise a strong presumption of flight risk.")

At the detention hearing, the undersigned indicated being open to reconsidering the "Order of Detention" if a place could be found where Defendant could be housed subject to electronic monitoring. (Docket Nos. 64; 74 at 26). In the *Motion for Reconsideration*, Mr. Lidinilah pointed out that Guara Bi could admit him with electronic monitoring. (Docket No. 77 at 1-3). The Second Amended Probation Report affirms that Guara Bi will accept Defendant with electronic monitoring **but** it will further limit his ability to move within the residential center's compound because of issues with cellular signal coverage. (Docket No. 95 at 4). The report also indicates that cellular signal coverage can trigger false alarms. Id. However, the report **does not** state that electronic monitoring would be useless except insofar as it would limit Defendant's ability to partake in the services and activities within the Guara Bi center. The Court does not view that limitation as an obstacle to releasing Defendant at this time.

Based on the new information provided by the Second Amended Pretrial Services Report, the Court would reconsider its September 3, 2020 "Order of Detention" (Docket No. 65) and release Defendant under the following conditions:

   (a)  Defendant shall be placed in home detention at Guara Bi;
   (b)  Defendant shall surrender his passport and any other travel documents and valuables to the USPO;

(c) Defendant cannot leave Guara Bi without the Probation Officer's permission;

(d) Defendant shall refrain from the use of alcohol;

(e) Defendant shall check in with the Probation Officer as required by the latter;

(f) All other standard conditions of pretrial release.

## IV. CONCLUSION

Based on the foregoing, the Court issues an indicative ruling that it would **GRANT** the *Motion for Reconsideration* (Docket No. 77) if it had jurisdiction and would release Defendant subject to the aforementioned conditions.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of November 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
